**AB** ALVAREZ BARBARA, LLP



1750 Coral Way
Second Floor
Miami, Florida 33145

Tel: (305) 263-7700
Fax: (305) 263-7699
www.alvarezbarbara.com

November 20, 2014

**Via U.S. Mail Facsimile 480-755-6999 and email Lorraine.botello@catlin.com**

Lorraine Botello
Senior Claims Examiner
Catlin Specialty Insurance Co.
P.O. Box 8049
Scottsdale, AZ 85252

| RE: | | |
|---|---|---|
| | Case Name : | Marta Hernandez v. Publix Supermarkets |
| | Our Client : | Marta Hernandez |
| | Date of Loss: | 04/10/14 |
| | Your Insured: | Commercial Douglas, LLC landlord for Publix Supermarket |
| | Your Claim No.: | SCS-GL-140092 |
| | Our File No : | 1777-0437-00 |

Dear Lorraine:

Please find enclosed a courtesy copy of the complaint that is in the process of being filed in the above referenced claim. Please note that we included claims for negligence, negligence per se, and violations of the Americans with Disabilities.

We have also asserted a claim for double damages pursuant to the Medicare Secondary Payer act. As you no doubt know, and as stated in greater detail in the enclosed complaint, 42 U.S.C. § 1395y(b)(2)(A) permits private causes of action to recover for health care expenses paid by Medicare. The Medicare Secondary Payer Act provides for payment of **double damages**, which in this case would total **$102,531.36.** It also triggers a claim for attorney fees and costs.

With that said, please do not hesitate to contact our office should you wish to discuss potential case resolution. Please note that we stand by our previous settlement offer of **$395,000.00.**

Thank you in advance for your anticipated, and prompt cooperation in connection with this claim. I look forward to hearing from you soon. In the interim, I remain

Sincerely,

Hugo V. Alvarez

HVA/avh
Enclosure
G:\1777-0437-00\L\Demand 002.doc

12/2/2014 2:13:50 PM

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

MARTA HERNANDEZ,

     Plaintiff,

v.

PUBLIX SUPER MARKETS, INC., DOUGLAS
COMMERCIAL DOUGLAS, LLC., and CATLIN
SPECIALTY INSURANCE COMPANY,

     Defendants.

_____/

## COMPLAINT FOR DAMAGES SOUNDING IN NEGLIGENCE, VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, FAILURE TO COMPLY WITH THE MEDICARE SECONDARY PAYOR ACT, FAILURE TO TENDER MEDPAY AND DEMAND FOR JURY TRIAL

Plaintiff MARTA HERNANDEZ (hereinafter "Plaintiff"), by and through her undersigned counsel, sues Defendants PUBLIX SUPER MARKETS, INC., a Florida Corporation (hereinafter "Publix"), COMMERCIAL DOUGLAS, LLC, a Florida limited liability company (hereinafter "CDLLC"), and CATLIN SPECIALTY INSURANCE CO., a Foreign Corporation (hereinafter "Catlin") (collectively hereinafter "Defendants"), and alleges as follows:

## THE PARTIES AND JURISDICTION

1.  This is an action for damages in excess of Fifteen Thousand ($15,000.00) dollars of exclusive interest, costs and attorney's fees.

CASE NO.:

2. At all times material hereto, the Plaintiff is/was a resident of Miami-Dade County, Florida and is otherwise *sui juris.*

3. Publix is a Florida corporation, organized and existing under the laws of Florida, qualified to do business in Florida, and has at all times material hereto been conducting business in Miami-Dade County, Florida. Publix operates a business at 1500 South Douglas Road, Coral Gables, Florida 33134, referred to in the Complaint as the Premises. Upon information and belief, Publix is the lessee, sub-lessee, lessor, and/or operator of the real property and improvements that are the subject of this action.

4. CDLLC is a Florida corporation, organized and existing under the laws of Florida, qualified to do business in Florida, and has at all times material hereto been conducting business in Miami-Dade County, Florida. CDLLC is the owner and/or operator of the Premises and improvements which the Premises is situated in and is the subject of this action. CDLLC is the owner and/or operator of the Premises and improvements which the Premises is situated in and is the subject of this action.

5. Catlin is a Foreign Corporation, which has at all times material hereto been operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida or having an office or agency in the State of Florida.

6. Venue is proper in Miami-Dade County.

7. All conditions precedent to the filing of this lawsuit have occurred, been waived, or been performed.

## GENERAL ALLEGATIONS

8. On or about April 10, 2014, Plaintiff suffered a fall at the Premises.

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33 
TEL. (305) 263-7700 FAX. (305) 263-7699

12/2/2014 2:13:52 PM

CASE NO.:

9.  Specifically, Plaintiff was visiting the Publix Super Market located at the Premises when she sustained serious injuries as a result of a fall as a direct result of the Defendants' violation of the Americans with Disabilities Act (ADA) coupled with the Defendants failure to provide adequate shopping carts.

10. The Defendant's violation of the ADA are documented in greater detail in the attached report and said report is incorporated by reference into this complaint. See Exhibit "**A**".

11.  Plaintiff intends to visit the Premises within six months, or sooner, to purchase goods from the Publix Super Market located therein.  Plaintiff intends on visiting the Premises and Publix Super Market within the next (6) months, or sooner, as soon as the Facility and Property become ADA compliant.

12.  At all times material hereto, Plaintiff travelled to the Premises and Publix Super Market as a customer, Plaintiff encountered numerous violations of the American with Disabilities Act Accessibility Guidelines ("ADAAG") for New Construction in direct violation of the ADA. See Exhibit "A".

13.  As a result of ADA's violations, coupled with the Defendants failure to provide a shopping cart that contained a braking mechanism that prevented the shopping cart from running away from the Plaintiff as a result of the documented ADA violations detailed in the attached Exhibit A, the Plaintiff suffered both physical and legal harm and injury.  The ADA violations created such a great slope that it was akin to placing the shopping cart – a shopping cart with no breaking mechanism – at the top of a hill and watching it roll down-hill uncontrollably.

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
263-7700 FAX (305) 263-7699

12/2/2014 2:13:53 PM

CASE NO.:

## COUNT I. DANGEROUS OR DEFECTIVE PARKING LOT (PUBLIX)

14. Plaintiffs, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

15. The ramp and the surface are of the parking lot at the premises constituted a dangerous and/or defective condition of the premises. See Exhibit "A".

16. Publix had actual or construction notice of the dangerous and/or defective condition.

17. At all times material hereto, Publix owed a duty to the public, including Plaintiff, to remedy or take action reasonably necessary to protect the public against any and all dangerous and/or defective conditions or the subject parking lot under its control, of which Publix had, either actual or constructive notice within a reasonable time of acquiring notice of the condition and provide a shopping cart that contained proper braking mechanisms.

18. That notwithstanding Publix's duty owed to Plaintiff, Publix breached said duty by:

(a) failing to properly adhere to the American Disabilities Act when constructing the subject parking lot where Plaintiff fell. See Exhibit "A";

(b) failing to post and maintain warnings advising the public of the dangerous condition of the subject parking lot, including, but not limited to, the slope of the disabled parking space where the incident occurred which did not comply with ADAAG. See Exhibit "A"; and

(c) failing to place, among other things, friction strips or other safeguards to make the subject parking lot safe for the disabled public; and

ALVAREZ BARBARA, LLP
WAY, SECOND FLOOR, MIAMI, FLORIDA

12/2/2014 2:13:54 PM

CASE NO.:

(d) failing to provide adequate and functioning shopping carts with proper braking mechanisms.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant PUBLIX SUPER MARKETS, INC., a Florida Corporation, due to the subject loss and for attorney's fees, costs, prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

# COUNT II. DANGEROUS OR DEFECTIVE PARKING LOT (CDLLC)

19.  Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

20.  The ramp and the surface are of the parking lot at the premises constituted a dangerous and/or defective condition of the premises.

21.  CDLLC had actual or construction notice of the dangerous and/or defective condition.

22.  At all times material hereto, CDLLC owed a duty to the public, including Plaintiff, to remedy or take action reasonably necessary to protect the public against any and all dangerous and/or defective conditions or the subject parking lot under its control, of which CDLLC had, either actual or constructive notice within a reasonable time of acquiring notice of the condition.

23.  That notwithstanding CDLLC's duty owed to Plaintiff, CDLLC breached said duty by:

(a) failing to properly adhere to the American Disabilities Act when constructing the subject parking lot where Plaintiff fell. See Exhibit "A";

(b) failing to post and maintain warnings advising the public of the dangerous condition of the subject parking lot, including, but not limited to, the slope of the disabled parking

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145 (305) 263-7699

12/2/2014 2:13:55 PM

CASE NO.:

space where the incident occurred which did not comply with ADAAG. <u>See</u> Exhibit "A"; and

(c) failing to place, among other things, friction strips or other safeguards to make the subject parking lot safe for the disabled public; and

(d) failing to provide adequate and functioning shopping carts with proper braking mechanisms.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant COMMERCIAL DOUGLAS, LLC, a Florida limited liability company, due to the subject loss and for attorney's fees, costs, prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

## COUNT III. ORDINARY NEGLIGENCE AND PRESUMPTION OF NEGLIGENCE – NEGLIGENC PER SE (PUBLIX)

24. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

25. Publix owed a duty of care to all invitees, including Plaintiff, by maintaining its premises in a reasonably safe condition, to inspect the premises as to ascertain its actual condition and to warn business invitees of latent dangers of which Defendant knew or should have known.

26. Notwithstanding this duty to all invitees, Publix committed the following negligent acts and omissions:

(a) negligently, carelessly, and recklessly maintained said parking lot in a dangerous condition which constituted the creation of a hazardous disabled parking space;

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33 12/2/2014 2:13:56 PM

(b) negligently, carelessly, and recklessly constructed the subject parking lot in such a manner when Publix knew or should have known that the subject parking lot did not comply with ADAAG, therefore violating the ADA;

(c) negligently, carelessly, and recklessly allowed a disabled parking space to be used so as to endanger those disabled persons carefully and lawfully using the subject disabled parking space, including the Plaintiff;

(d) negligently, carelessly, and recklessly failed to provide disabled persons, including Plaintiff, a reasonable and safe means of access to and from its store;

(e) negligently, carelessly, and recklessly failed to secure said disabled parking space which exceeded the 1:48 (2.1%) max slope and cross-slope allowance pursuant to the 2010 ADAAG standards (see Exhibit "A");

(f) negligently, carelessly, and recklessly failed to warn persons, including Plaintiff, that the subject disabled parking space did not meet ADAAG guidelines and was a dangerous and hazardous condition; and

(g) failing to provide adequate and functioning shopping carts with proper braking mechanisms.

27.    Publix violated local ordinance, statute, rules, regulations and codes, (including the American with Disabilities Act and the Federal Americans with Disability Guidelines), which constitutes a presumption of negligence per se and/or strict liability. See Exhibit "A".

28.   As a direct and proximate cause of the negligent acts and omissions of Publix, including those alleged herein, Plaintiff fell on the subject disabled parking space.

29.  Plaintiff has sustained severe and permanent personal injuries to her entire body as a direct result of the fall, including, but not limited to injuries to her left knee, back, head, left shoulder, left arm, humerus fracture, etc. These injuries have caused

CASE NO.:

Plaintiff to suffer a great amount of pain, disability, loss of earning (past, present, and future), loss of future earning capacity, medical, and other expenses.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant PUBLIX SUPER MARKETS, INC., a Florida Corporation, due to the subject loss and for attorney's fees, costs, prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

## COUNT IV. ORDINARY NEGLIGENCE AND PRESUMPTION OF NEGLIGENCE – NEGLIGENCE PER SE (CDLLC)

30. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

31. CDLLC owed a duty of care to all invitees, including Plaintiff, by maintaining its premises in a reasonably safe condition, to inspect the premises as to ascertain its actual condition and to warn business invitees of latent dangers of which CDLLC knew or should have known.

32. Notwithstanding this duty to all invitees, CDLLC committed the following negligent acts and omissions:

   (a) negligently, carelessly, and recklessly maintained said parking lot in a dangerous condition which constituted the creation of a hazardous disabled parking space;

   (b) negligently, carelessly, and recklessly constructed the subject parking lot in such a manner when CDLLC knew or should have known that the subject parking lot did not comply with ADAAG, therefore violating the ADA;

   (c) negligently, carelessly, and recklessly allowed a disabled parking space to be used so as to endanger those disabled persons carefully and lawfully using the subject disabled parking space, including the Plaintiff;

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
TEL. (305) 263-7700 FAX. (305) 263-7699

12/2/2014 2:13:58 PM

CASE NO.:

(d)  negligently, carelessly, and recklessly failed to provide disabled persons, including Plaintiff, a reasonable and safe means of access to and from its store;

(e)  negligently, carelessly, and recklessly failed to secure said disabled parking space which exceeded the 1:48 (2.1%) max slope and cross-slope allowance pursuant to the 2010 ADAAG standards (see Exhibit "A"); and

(f)  negligently, carelessly, and recklessly failed to warn persons, including Plaintiff, that the subject disabled parking space did not meet ADAAG guidelines and was a dangerous and hazardous condition; and

(g)  failing to provide adequate and functioning shopping carts with proper braking mechanisms.

33.  CDLLC violated local ordinance, statute, rules, regulations and codes, (including the American with Disabilities Act and the Federal Americans with Disability Guidelines), which constitutes a presumption of negligence per se and/or strict liability. See Exhibit "A".

34.  As a direct and proximate cause of the negligent acts and omissions of CDLLC, including those alleged herein, Plaintiff fell on the subject disabled parking space.

35.  Plaintiff has sustained severe and permanent personal injuries to her entire body as a direct result of the fall, including, but not limited to injuries to her left knee, back, head, left shoulder, left arm, humerus fracture, etc. These injuries have caused Plaintiff to suffer a great amount of pain, disability, loss of earning (past, present, and future), loss of future earning capacity, medical, and other expenses.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant COMMERCIAL DOUGLAS, LLC, a Florida limited liability company, due to the subject loss and for attorney's fees, costs,

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
(305) 263-7699
12/2/2014 2:13:59 PM

CASE NO.:

prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

## COUNT V. NUISANCE PER SE
### (PUBLIX)

36. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

37. At all times alleged herein, Publix knowingly maintained the subject parking lot, including the disabled parking spaces in an unreasonably dangerous and defective manner.

38. As a result of the subject disabled parking spaces' inherently dangerous condition, regardless of or the extent of the due care afforded by Publix by allowing the dangerous subject disabled parking space to exist, constituted a nuisance per se.

39. As a direct and proximate result of Publix's failure to eliminate the nuisance per se, a dangerous disabled parking space was created and left to exist, causing Plaintiff to slip and fall and suffer severe persona injuries listed herein.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant PUBLIX SUPER MARKETS, INC., a Florida Corporation, due to the subject loss and for attorney's fees, costs, prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

## COUNT VI. NUISANCE PER SE
### (CDLLC)

40. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

41. At all times alleged herein, CDLLC knowingly maintained the subject parking lot, including the disabled parking spaces in an unreasonably dangerous and defective manner.

42. As a result of the subject disabled parking spaces' inherently dangerous condition, regardless of or the extent of the due care afforded by CDLLC by allowing the dangerous subject disabled parking space to exist, constituted a nuisance per se.

43. As a direct and proximate result of CDLLC's failure to eliminate the nuisance per se, a dangerous disabled parking space was created and left to exist, causing Plaintiff to slip and fall and suffer severe persona injuries listed herein.

WHEREFORE, Plaintiff MARTA HERNANDEZ, prays for damages for the amount of the losses herein against Defendant COMMERCIAL DOUGLAS, LLC, a Florida limited liability company, due to the subject loss and for attorney's fees, costs, prejudgment interest and demands trial by jury of all issues so triable as a matter of right.

## COUNT VII. VIOLATION OF ADA (PUBLIX)

44. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

45. On or about July 26, 1990, Congress enacted the ADA. 42 U.S.C. §12101, et seq.

46. At the time, Congress found, among other things, that:

> (a) some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

> (b) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA
12/2/2014 2:14:01 PM

CASE NO.:

improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(c) discrimination against individuals with disabilities persists in such critical areas, such as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(d) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(e) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions dollars in unnecessary expenses resulting from dependency and non productivity.

42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

47.    Congress explicitly stated that the purpose of the ADA was to:

(a) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(b) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

(c) invoke the sweep of congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2), and (4).

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
12/2/2014 2:14:02 PM

CASE NO.:

48.     The Premises must be, but it is not, in compliance with the ADA and ADAAG. The Publix Super Market must be, but it is not, in compliance with the ADA and ADAAG.

49.     Plaintiff has attempted to and has, to the extent possible, accessed the Premises and the Publix Super Market in her capacity as a customer of the Publix Super Market and Premises, but could not fully do so because of the dangerous conditions and ADA violations more specifically set forth herein and incorporated herein by referenced as per the attached documents. See Exhibit A.

50.     Publix has discriminated against Plaintiff, and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of the Facility and Property, as prohibited by, and 42 U.S.C. §12182 (b)(2)(A)(iv), and will continue to discriminate against Plaintiff and others with disabilities unless and until Publix and CDLLC are compelled to make the Publix Super Market and Premises accessible to and usable by persons with disabilities, including Plaintiff. See Exhibit "A".

51.     Publix has discriminated against Plaintiff by failing to comply with the above requirements.  A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions, ADA violations which Plaintiff experienced and/or observed and preclude and/or limit Plaintiff's ability (because of her disability) to access the Publix Super Market and Premises and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of the Publix Super Market and Premises, include:

## ACCESSIBLE ELEMENTS

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 331 12/2/2014 2:14:03 PM

CASE NO.:

(a)  "The cross-slope of the disabled parking spaces where the incident occurred exceeds max 1:48 (2.1%).  Current cross-slope is 3.4 to 3.7%."  See Exhibit "A" and Photos No. 1-4, and 9 attached to Exhibit "A".

(b)  "The slope of the disabled parking space where the incident occurred exceeds max 1:48 (2.1%).  Current slope is 3.4%."  See Exhibit "A" and Photo No. 5 attached to Exhibit "A".

(c)  "The curb ramp at the entrance to the [Publix] supermarket that services the disabled parking spaces exceeds max 1:12 (8.33%). Current slope is 10.3%."  See Exhibit "A" and Photos No. 6-7 attached to Exhibit "A".

(d)  "The disabled parking spaces are not located on the shortest path of travel to the accessible [Publix] supermarket entrance.  Many of the disabled parking spaces could be located on the south side of the parking row, being much closer to the accessible entrance (even though accessible entrance is currently serviced via a non-compliant curb ramp." See Exhibit "A" and Photo No. 8 attached to Exhibit "A".

(e)  There is currently no accessible route (path of travel) from the public sidewalk to the main accessible supermarket entrance . . . The only current route is through the parking garage into oncoming traffic."  See Exhibit "A" and Photos No. 10-14 attached to Exhibit "A".

52.    The above listing is not to be considered all-inclusive of the conditions or violations encountered by Plaintiff and/or which exist at the Publix Super Market and Premises.  Plaintiff will require an inspection(s) of the Publix Supermarket and Premises to determine all of the discriminatory acts violating the ADA.

53.    All of the above violations are readily achievable to modify in order to bring the Publix Super Market and Premises into compliance with the ADA.

54.    The removal of the violations and dangerous conditions at the Publix Super Market and on the Premises is readily achievable because the nature and cost of

12/2/2014 2:14:04 PM

CASE NO.:

the modifications are relatively low and Publix has the financial resources to make the necessary modifications.

55.     Upon information and belief, the Property is a newly constructed place of public accommodation and commercial facility and therefore subject to the 2010 ADAAG. See Exhibit "A". 28 C.F.R. § 36.401; 36.406.

56.     Plaintiff has attempted to gain access to the Publix Super Market and Premises in his capacity as a customer, but because of her disability has been denied access to, and has been denied the benefit of services, programs, and activities of the Publix Super Market and Premises, and has otherwise been discriminated against and damaged by Publix because of the ADA violations and dangerous conditions set forth above and in the attached Exhibit "A", and expects to be discriminated against in the near future by Publix because of Plaintiff's disabilities, unless and until Publix is compelled to comply with the ADA and ADAAG.

57.     The ADA violations and dangerous conditions set forth herein are readily achievable and can be accomplished without much difficult or expense.  42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

58.     Plaintiff is without an adequate remedy at law, suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Publix is required to comply with the ADA and ADAAG guidelines for the violations that exist at the Publix Super Market and Premises.  The relief requested serves the public interest and the benefit to Plaintiff and the public far outweigh any detriment to Publix.

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 12/2/2014 2:14:05 PM
Tel. (305) 263-7700 Fax. (305) 263-7699

CASE NO.:

59.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned reasonable attorneys' fees, costs, and expenses from Publix pursuant to 42 U.S.C. § § 12205 and 12117.

60.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject Publix Super Market and Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

WHEREFORE, Plaintiff, MARTA HERNANDEZ, respectfully requests that this Court issue a permanent injunction enjoining PUBLIX SUPER MARKET, INC., from continuing their discriminatory practices, ordering Publix to come into compliance and make the Publix Super Market readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs.

## COUNT VIII. VIOLATION OF ADA (CDLLC)

61.     Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

62.     On or about July 26, 1990, Congress enacted the ADA.  42 U.S.C. §12101, et seq.

63.     At the time, Congress found, among other things, that:

(a) some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(b) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
12/2/2014 2:14:06 PM

CASE NO.:

improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(c) discrimination against individuals with disabilities persists in such critical areas, such as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(d) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(e) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions dollars in unnecessary expenses resulting from dependency and non productivity.

42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

64.    Congress explicitly stated that the purpose of the ADA was to:

(a) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(b) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

(c) invoke the sweep of congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2), and (4).

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145

12/2/2014 2:14:07 PM

CASE NO.:

65.     The Premises must be, but it is not, in compliance with the ADA and ADAAG. The Publix Super Market must be, but it is not, in compliance with the ADA and ADAAG.

66.     Plaintiff has attempted to and has, to the extent possible, accessed the Premises and the Publix Super Market in her capacity as a customer of the Publix Super Market and Premises, but could not fully do so because of his disabilities due to the dangerous conditions and ADA violations that exist at the Publix Super Market and Premises that preclude and/or limit his access to the Facility and Property and/or the goods, services, facilities, privileges, advantages, and/or accommodations offered therein, including those dangerous conditions and ADA violations more specifically set forth herein.

67.     CDLLC has discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of the Facility and Property, as prohibited by, and 42 U.S.C. §12182 (b)(2)(A)(iv), and will continue to discriminate against Plaintiff and others with disabilities unless and until Public and CDLLC are compelled to make the Publix Super Market and Premises accessible to and usable by persons with disabilities, including Plaintiff. See Exhibit "A".

68.     CDLLC has discriminated against Plaintiff by failing to comply with the above requirements. A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions, ADA violations which Plaintiff experienced and/or observed and preclude and/or limit Plaintiff's ability (because of his disability) to access the Publix Super Market and Premises and/or full and equal enjoyment of the goods,

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA
FAX (305) 263-7699

12/2/2014 2:14:08 PM

CASE NO.:

services, facilities, privileges, advantages, and/or accommodations of the Publix Super

Market and Premises, include:

## ACCESSIBLE ELEMENTS

(a) "The cross-slope of the disabled parking spaces where the incident occurred exceeds max 1:48 (2.1%). Current cross-slope is 3.4 to 3.7%." See Exhibit "A" and Photos No. 1-4, and 9 attached to Exhibit "A".

(b) "The slope of the disabled parking space where the incident occurred exceeds max 1:48 (2.1%). Current slope is 3.4%." See Exhibit "A" and Photo No. 5 attached to Exhibit "A".

(c) "The curb ramp at the entrance to the [Publix] supermarket that services the disabled parking spaces exceeds max 1:12 (8.33%). Current slope is 10.3%." See Exhibit "A" and Photos No. 6-7 attached to Exhibit "A".

(d) "The disabled parking spaces are not located on the shortest path of travel to the accessible [Publix] supermarket entrance. Many of the disabled parking spaces could be located on the south side of the parking row, being much closer to the accessible entrance (even though accessible entrance is currently serviced via a non-compliant curb ramp." See Exhibit "A" and Photo No. 8 attached to Exhibit "A".

(e) There is currently no accessible route (path of travel) from the public sidewalk to the main accessible supermarket entrance . . . The only current route is through the parking garage into oncoming traffic." See Exhibit "A" and Photos No. 10-14 attached to Exhibit "A".

69.    The above listing is not to be considered all-inclusive of the conditions or

violations encountered by Plaintiff and/or which exist at the Publix Super Market and

Premises. Plaintiff will require an inspection(s) of the Publix Supermarket and Premises

to determine all of the discriminatory acts violating the ADA.

ALVAREZ BARBARA, LLP   12/2/2014 2:14:09 PM
SECOND FLOOR, MIAMI, FLORIDA

CASE NO.:

70.    All of the above violations are readily achievable to modify in order to bring the Publix Super Market and Premises into compliance with the ADA.

71.    The removal of the violations and dangerous conditions at the Publix Super Market and on the Premises is readily achievable because the nature and cost of the modifications are relatively low and CDLLC has the financial resources to make the necessary modifications.

72.    Upon information and belief, the Property is a newly constructed place of public accommodation and commercial facility and therefore subject to the 2010 ADAAG. See Exhibit "A". 28 C.F.R. § 36.401; 36.406.

73.    Plaintiff has attempted to gain access to the Publix Super Market and Premises in his capacity as a customer, but because of his disability has been denied access to, and has been denied the benefit of services, programs, and activities of the Publix Super Market and Premises, and has otherwise been discriminated against and damaged by CDLLC because of the ADA violations and dangerous conditions set forth above and in the attached Exhibit "A", and expects to be discriminated against in the near future by CDLLC because of Plaintiff's disabilities, unless and until CDLLC is compelled to comply with the ADA and ADAAG.

74.    The ADA violations and dangerous conditions set forth herein are readily achievable and can be accomplished without much difficult or expense.  42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

75.    Plaintiff is without an adequate remedy at law, suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until CDLLC is required to comply with the ADA and ADAAG guidelines for the

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
(305) 263-7700 Fax (305) 263-7699

12/2/2014 2:14:10 PM

CASE NO.:

violations that exist at the Publix Super Market and Premises.  The relief requested serves the public interest and the benefit to Plaintiff and the public far outweigh any detriment to CDLLC.

76.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned reasonable attorneys' fees, costs, and expenses from CDLLC pursuant to 42 U.S.C. § § 12205 and 12117.

77.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject Publix Super Market and Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

WHEREFORE, Plaintiff respectfully requests that this Court issue a permanent injunction enjoining COMMERCIAL DOUGLAS, LLC, a Florida limited liability company, from continuing their discriminatory practices, ordering CDLLC to come into compliance and make the Publix Super Market readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs.

## COUNT IX. CLAIM AGAINST CATLIN SPECIALTY INSURANCE COMPANY FOR MEDPAY BENEFITS

78. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

79. The Plaintiff has incurred medical bills in excess of the $5,000.00 in available "medpay" expenses as a result of the subject incident.

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145
(305) 263-7700 FAX. (305) 263-7699
12/2/2014 2:14:11 PM

CASE NO.:

80. These medical bills were incurred from numerous medical providers related to this incident.

81. No payment has been received from either named Defendant for such medpay benefits, or said medpay benefits were tendered over to the Plaintiff beyond the time allotted by law, which in turn resulted in damages to Plaintiff.

82. That the Plaintiff is an intended third party beneficiary of the subject contract, which is designed to compensate third parties for medical expenses. Plaintiff's counsel requested payment of the medpay benefits on June 20, 2014. See attached Exhibit B. Sixty days elapsed and no med pay was tendered. As of the date of the filing of this lawsuit, Medpay benefits have not been tendered.

83. Sixty days have elapsed and no med pay was tendered. As of the date of the filing of this lawsuit, Medpay benefits have not been tendered.

84. The Plaintiff is entitled to attorney fees and costs given that the Defendants have refused to tender to medpay benefits, and failed to timely pay med pay benefits. The Plaintiff is entitled to fees and costs under Fla. Stat. §627.428 and/or other statutory provisions, as this claim falls under the wording of §627.428.

WHEREFORE, Plaintiff, MARTA HERNANDEZ, demands payment for incurred medical payments under the Medpay provision of the subject liability policy, and/or damages resulting from Defendant's CATLIN SPECIALTY INSURANCE COMPANY late tender of the medical payments under the Medpay provision of the subject liability policy, plus attorneys' fees, costs and interest and further demands trial by jury. Courtesy copy of the Complaint has been sent to claims representative, Lorraine Botello, via email at Lorraine.botello@catlin.com.

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 3***
*** 7700 FAX. (305) 263-7699

12/2/2014 2:14:12 PM

CASE NO.:

## COUNT X. – PRIVATE CAUSE OF ACTION FOR DOUBLE DAMAGES PURSUANT TO THE MEDICARE SECONDARY PAYOR ACT

85. Plaintiff, readopts and re-alleges Paragraphs one (1) through thirteen (13) above as fully set forth herein and further alleges:

86. In 1980, while confronted with skyrocketing Medicare costs, Congress recognized that those responsible for the payment of medical costs when people were injured (i.e. employers and liability insurers) often allowed Medicare to pay the medical bills as the "primary payer" when an employee or a tort victim was older than 65. In order to curtail this practice, Congress enacted the Medicare as Secondary Payer Act ("MSP"), which made liability insurers and self-insured tortfeasors responsible as the "primary" payers of [an] injured persons' medical costs." 42 U.S.C. § 1395y(b)(2)(A).

87. The underlying intent behind the enactment of the MSP was to shift the financial burden of health care from the Medicare program to private insurers in order to lower the cost of the Medicare program.

88. Congress "established a private cause of action for damages (**which shall be in an amount _double_ the amount otherwise provided**) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)" in accordance with Section 1395y(b)(3)(A) of the MSP.

89. Under the MSP, private parties who are aware of non-payment by primary plans can bring an action to enforce Medicare's rights against the primary plan with double recovery. 42 U.S.C. § 1395y(b)(3)(A).

90. Therefore, the Plaintiff brings this action under the private cause of action for damages provision of the MSP seeking to recover for the Medicare program all the

ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33 12/2/2014 2:14:13 PM

CASE NO.:

expenditures made on the Plaintiff's behalf for health care services rendered to the Plaintiff for the treatment of injuries she sustained as a result of the subject accident.

91. The MSP's function is straightforward – to relieve Medicare from making payment for covered services if such payment has been or could reasonably be expected to be made by someone else, called the "primary payer" or the "primary plan."

92. Plaintiff was a Medicare recipient at the time of the subject accident.

93. Medicare paid approximately $51,265.68 for the treatment of the Plaintiff's injuries, and said expenses were reasonably related to the injuries.  See attached Exhibit C.  In accordance with the charges allowed, the Plaintiff seeks to charge the Defendants for the medical expenses and services resulting from the injuries sustained by the Plaintiff in her accident on April 10, 2014.

94. Plaintiff brings this action under the private cause of action established by 42 U.S.C. §1395y(b)(3)(A) to recover from Defendants, double damages for their failure to pay as primary or to make the appropriate reimbursement.

95. Under the private cause of action established by 42 U.S.C. §1395y(b)(3)(A), Plaintiff is entitled to recover "an amount double the amount otherwise provided."  Plaintiff is therefore entitled to payments of Medicare benefits in the amount of $51,265.68, and is entitled to recover double that amount from the Defendants, which would total $102,531.36.

96. The Defendants have failed to reimburse the $51,265.68 for medical expenses incurred are the Plaintiff is now entitled to double damages.  The demand letter was sent and the Defendants rejected the demand. See attached Exhibit D.

CASE NO.:

97. Despite being a primary payer, the Defendants have not paid for, or in any other way provided for primary payment of these costs of the health care services provided to the Plaintiff in violation of the MSP.

98. Due to the Defendants' wrongful conduct, Medicare became the primary payer for the costs of the treatment of the Plaintiff's accident related injuries in violation of the MSP.

99. As a result, under the private cause of action provision of the MSP, damages from the Defendants should be awarded in an amount twice that of Medicare's payments for the costs of the health care services provided to the Plaintiff to treat her accident related injuries.

**WHEREFORE**, Plaintiff, demands judgment against the named Defendants for double damages, reasonable attorney's fees, court costs, interests, and such other and further relief as this Court deems just and proper.

Dated this _____ day of November, 2014.

ALVAREZ BARBARA, LLP
Counsel for Plaintiff
1750 Coral Way
Second Floor
Miami, FL 33145
Tel: (305) 263-7700
Fax: (305) 263-7699
halvarez@alvarezbarbara.com

By:_____
HUGO V. ALVAREZ
FBN: 163960

G:\1777-0437-00\P\Complaint 001.doc

-25-
ALVAREZ BARBARA, LLP
1750 CORAL WAY, SECOND FLOOR, MIAMI, FLORIDA 33145

12/2/2014 2:14:15 PM



## A.D.A Compliance Specialists, Inc.
*"The Business Owners One-Stop Shop to A.D.A. Compliance."*

---

## ADA Inspection Report

| | |
|---|---|
| Business: | Alvarez & Barbara, LLP<br>1750 Coral Way, 2nd Floor<br>Miami, FL 33145 |
| Property Address: | Publix Supermarket<br>1500 South Douglas Rd.<br>Coral Gables, FL 33134 |
| Contact: | Hugo Alvarez, Esq. |
| Inspection Date: | October 4, 2014 |

---

### NEW CONSTRUCTION

III-5.0000 NEW CONSTRUCTION

Regulatory references: 28 CFR 36.401; 36.406; Appendix A.

III-5.1000 General. All newly constructed places of public accommodation and commercial facilities must be readily accessible to and usable by individuals with disabilities to the extent that it is not structurally impracticable. This requirement, along with the requirement for accessible alterations, are the only requirements that apply to commercial facilities.

What is "readily accessible and usable"? This means that facilities must be built in strict compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG). There is no cost defense to the new construction requirements.

What buildings are covered? The new construction requirements apply to any facility first occupied after January 26, 1993, for which the last application for a building permit or permit extension is certified as complete after January 26, 1992; or in those jurisdictions where the government does not certify completion of applications, the date that the last application for a building permit or permit extension is received by the government.

---

EXHIBIT
A

12/2/2014 2:14:16 PM

Publix Supermarket
ADA Inspection Report

What if a building is occupied before January 26, 1993? It is not covered by the title III new construction requirements.

What does "structurally impracticable" mean? The phrase "structurally impracticable" means that unique characteristics of the land prevent the incorporation of accessibility features in a facility. In such a case, the new construction requirements apply, except where the private entity can demonstrate that it is structurally impracticable to meet those requirements. This exception is very narrow and should not be used in cases of merely hilly terrain. The Department expects that it will be used in only rare and unusual circumstances.

Even in those circumstances where the exception applies, portions of a facility that can be made accessible must still be made accessible. In addition, access should be provided for individuals with other types of disabilities, even if it may be structurally impracticable to provide access to individuals who use wheelchairs.

## BACKGROUND

This expert was retained to inspect the parking lot of the Publix Supermarket located at 1500 South Douglas Road in Coral Gables, FL to determine compliance with the 2010 standards of the ADAAG (2010 Standards for Accessible Design) in relation to an accident regarding a personal injury claim. This Publix was constructed after 1992 thus subject to the new construction standards of the ADA with the 2010 ADAAG being the most current standards (requirements).

## INSPECTION

On the day of the inspection, this expert, utilizing a calibrated digital level and standard tape measure, identified the following non-compliance regarding the parking lot (especially pertaining to the area where the accident occurred):

1. The cross-slope of the disabled parking spaces where the accident occurred exceeds max 1:48 (2.1%). Current cross-slope is 3.4 to 3.7%. (See photo #1, 2, 3, 4, 9)

   *See code section "A" for applicable codes and figures

2. The slope of the disabled parking space where the accident occurred exceeds max 1:48 (2.1%). Current slope is 3.4%. (See photo #5)

   *See code section "A" for applicable codes and figures

2

12/2/2014 2:14:17 PM

Publix Supermarket
ADA Inspection Report

3. The curb ramp at the entrance to the supermarket that services the disabled parking spaces exceeds max 1:12 (8.33%). Current slope is 10.3%. (See photo #6, 7)

   *See code section "B" for applicable codes and figures*

4. The disabled parking spaces are not located on the shortest path of travel to the accessible supermarket entrance. Many of the disabled parking spaces could be located on the south side of the parking row, being much closer to the accessible entrance (even though accessible entrance is currently serviced via a non-compliant curb ramp). (See photo #8)

   *See code section "A" for applicable codes and figures*

5. There is currently no accessible route (path of travel) from the public sidewalk to the main accessible supermarket entrance. This is required, especially as there is a bus stop that services persons with disabilities east of the supermarket. The only current route is through the parking garage into oncoming traffic. (See photo #10, 11, 12, 13, 14)

   *See code section "C" for applicable codes and figures*

## CONCLUSION

There are several areas of the parking lot that do not comply with the 2010 ADAAG standards, especially where the accident occurred. The main issue is the slope and cross-slope of the disabled parking spaces exceeding the 1:48 (2.1%) max slope and cross-slope allowance. When the disabled parking space is not level to max 1:48 (2.1%), it creates a hazard. In this case, it is this expert's opinion that ADA non-compliance where the accident occurred contributed to the customer's accident (falling down on to the asphalt).

12/2/2014 2:14:18 PM

Publix Supermarket
ADA Inspection Report

**PHOTOS**

A



Facility signage

#1



Cross-slope of disabled parking space where accident occurred

4

12/2/2014 2:14:19 PM

Publix Supermarket
ADA Inspection Report

#2



Cross-slope of disabled parking space where accident occurred

#3



Cross-slope of disabled parking space where accident occurred

12/2/2014 2:14:20 PM

Publix Supermarket
ADA Inspection Report

#4



Cross-slope of disabled parking space where accident occurred

#5



Slope of disabled parking space where accident occurred

12/2/2014 2:14:21 PM

Publix Supermarket
ADA Inspection Report

#6



Non-compliant slope of curb ramp at entrance to store

#7



Non-compliant slope of curb ramp at entrance to store

7

12/2/2014 2:14:22 PM

Publix Supermarket
ADA Inspection Report

#8



South side of parking row where disabled parking spaces could be located

#9



Picture showing disabled parking spaces on slope

12/2/2014 2:14:23 PM

Publix Supermarket
ADA Inspection Report

#10



Proposed location of connection to the public sidewalk and bus stop

#11



Proposed location of connection to the public sidewalk and bus stop

9

12/2/2014 2:14:24 PM

Publix Supermarket
ADA Inspection Report

#12



Proposed location of connection to the public sidewalk and bus stop

#13



Current non-compliant accessible route to public sidewalk

10

12/2/2014 2:14:25 PM

#14



Picture showing disabled parking spaces on a slope

12/2/2014 2:14:26 PM

## CODES & FIGURES

### SECTION A:

- **208.3.1- FACBC General.** *Designated accessible spaces shall be designed and marked for the exclusive use of those individuals who have a severe physical disability and have permanent or temporary mobility problems that substantially impair their ability to ambulate and who have been issued either a disabled parking permit under s. 316.1958 or s. 320.0848 or a license plate under s. 320.084, s. 320.0842, s. 320.0843, or s. 320.0845. Parking spaces complying with 502 that serve a particular building or facility shall be located on the shortest accessible route from parking to an entrance complying with 206.4. All spaces must be located on an accessible route that is at least 44 inches (1118 mm) wide and so that users are not compelled to walk or wheel behind parked vehicles except behind his or her own vehicle. Where parking serves more than one accessible entrance, parking spaces complying with 502 shall be dispersed and located on the shortest accessible route to the accessible entrances. If there are multiple entrances for multiple retail stores the parking spaces must be dispersed to provide parking at the nearest accessible entrance. In parking facilities that do not serve a particular building or facility, parking spaces complying with 502 shall be located on the shortest accessible route to an accessible pedestrian entrance of the parking facility.*

- **502.1 FACBC - General.** *Car and van parking spaces shall comply with 502. Where parking spaces are marked with lines, width measurements of parking spaces and access aisles shall be made from the centerline of the markings. EXCEPTION: Where parking spaces or access aisles are not adjacent to another parking space or access aisle, measurements shall be permitted to include the full width of the line defining the parking space or access aisle.*

- **502.2 FACBC - Vehicle Spaces.** *Each parking space must be at least 12 feet (3658 mm) wide, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.*

- **502.3 Access Aisle.** *Access aisles serving parking spaces shall comply with 502.3. Access aisles shall adjoin an accessible route. Two parking spaces shall be permitted to share a common access aisle. Parking access aisles must be part of an accessible route to the building or facility entrance. Access aisles must be placed adjacent to accessible parking spaces. All spaces must be located on an accessible route that is at least 44 inches (1118 mm) wide so that users are not compelled to walk or wheel behind parked vehicles except behind his or her own vehicle. EXCEPTION: Access aisles are not required for on-street parallel parking.*

- **Advisory 502.3 Access Aisle.** *Accessible routes must connect parking spaces to accessible entrances. In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles.*

12/2/2014 2:14:27 PM



Figure 502.3 Parking Space Access Aisle

- **502.3.1 Width.** Access aisles serving car and van parking spaces shall be 60 inches (1525 mm) wide minimum.

- **502.3.2 Length.** Access aisles shall extend the full length of the parking spaces they serve.

- **502.3.3 Marking.** Access aisles shall be marked so as to discourage parking in them.

- **Advisory - FACBC 502.3.3 Marking.** Florida law, s.553.5041(5)(c)1., requires diagonal striping of access aisles. Because these requirements permit the van access aisle to be as wide as a parking space, it is important that the aisle be clearly marked.

- **502.3.4 Location.** Access aisles shall not overlap the vehicular way. Access aisles shall be permitted to be placed on either side of the parking space except for angled van parking spaces which shall have access aisles located on the passenger side of the parking spaces.

- **Advisory 502.3.4 Location.** Wheelchair lifts typically are installed on the passenger side of vans. Many drivers, especially those who operate vans, find it more difficult to back into parking spaces than to back out into comparatively unrestricted vehicular lanes. For this reason, where a van and car share an access aisle, consider locating the van space so that the access aisle is on the passenger side of the van space.

- **502.4 Floor or Ground Surfaces.** Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. EXCEPTION: Slopes not steeper than 1:48 shall be permitted.

- **Advisory 502.4 Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48.

- **502.6.1** Each such parking space must be striped in a manner that is consistent with the standards of the controlling jurisdiction for other spaces and prominently outlined with blue paint, and must be repainted when necessary, to be clearly distinguishable as a parking space designated for persons who have disabilities. The space must be posted with a permanent above-grade sign of a color and design approved by the Department of Transportation, which is placed on or at least 60 inches (1525 mm)above the finished floor or ground surface measured to the bottom of the sign and which bears the international symbol of accessibility and the caption "PARKING BY DISABLED PERMIT ONLY."Such a sign, erected after October 1, 1996,must indicate the penalty for

12/2/2014 2:14:28 PM

*illegal use of the space. Any provision of this section to the contrary notwithstanding, in a theme park or an entertainment complex as defined in Section 509.013 in which accessible parking is located in designated lots or areas, the signage indicating the lot as reserved for accessible parking may be located at the entrances to the lot in lieu of a sign at each parking place.*

- **Advisory 502.6 Identification.** The required "van accessible" designation is intended to be informative, not restrictive, in identifying those spaces that are better suited for van use. Enforcement of motor vehicle laws, including parking privileges, is a local matter.

- **502.7 Relationship to Accessible Routes.** Parking spaces and access aisles shall be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes.



Accessible Parking Spaces
(as described in FDOT Standards)

14

12/2/2014 2:14:29 PM



PARKING BY
DISABLED
PERMIT ONLY
TOW AWAY ZONE
& FINE TO
$250.00

18"

8'-6"

7'-0"

FLANGED POST PER

12"

FINISH GRADE

1'-6"

18"0

**SECTION B:**
- **405.2 Slope.** Ramp runs shall have a running slope not steeper than 1:12. EXCEPTION: In existing sites, buildings, and facilities, ramps shall be permitted to have running slopes steeper than 1:12 complying with Table 405.2 where such slopes are necessary due to space limitations.

Table 405.2 Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities

| Slope[1] | Maximum Rise |
|---|---|

15

12/2/2014 2:14:30 PM

| Steeper than 1:10 but not steeper than 1:8 | 3 inches (75 mm) |
|---|---|
| Steeper than 1:12 but not steeper than 1:10 | 6 inches (150 mm) |
| 1. A slope steeper than 1:8 is prohibited. | |

- **406.2 Counter Slope.** Counter slopes of adjoining gutters and road surfaces immediately adjacent to the curb ramp shall not be steeper than 1:20. The adjacent surfaces at transitions at curb ramps to walks, gutters, and streets shall be at the same level.

**SECTION C:**
- **206.2.1 Site Arrival Points.** At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

- **206.2.2 Within a Site.** At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.

- **403.3 Slope.** The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of walking surfaces shall not be steeper than 1:48.

12/2/2014 2:14:31 PM

**COMMENTS:**

All modification should be done to new construction standards per the ADAAG and FACBC.

**DISCLAIMER:**

ADA Compliance Specialists, Inc. is an independent consulting firm specializing in advising businesses on complying with the Americans with Disabilities Act. This inspection is independent of all parties and is un-biased. All parties hold harmless and indemnify ADA Compliance Specialists, Inc., its employees, inspectors and agents from any damages, claims, demands, legal actions or causes of actions arising in connection with or brought by anyone regarding or alleging ADA code violations concerning this report.

Respectfully Submitted,

**ADA COMPLIANCE SPECIALISTS, INC.**
Defense Consultants
P.O. Box 416522
Miami Beach, FL 33141

By: _____
David Goldfarb

Date: _____November 3, 2014_____

12/2/2014 2:14:32 PM

 **ALVAREZ BARBARA, LLP**

1750 Coral Way
Second Floor
Miami, Florida 33145

Tel: (305) 263-7700
Fax: (305) 263-7699
www.alvarezbarbara.com

June 20, 2014

**Via U.S. Mail Facsimile 480-755-6999 and email Lorraine.botello@catlin.com**

Lorraine Botello
Senior Claims Examiner
Catlin Specialty Insurance Co.
P.O. Box 8049
Scottsdale, AZ 85252

RE:  Case Name : **Marta Hernandez v. Publix Supermarkets**
     Our Client  : **Marta Hernandez**
     Date of Loss: **04/10/14**
     Your Insured: **Commercial Douglas, LLC landlord for Publix Supermarket**

     Your Claim No.: **SCS-GL-140092**
     Our File No  : **1777-0437-00**

Dear Lorraine:

This office represents **Marta Hernandez**, in a claim for personal injuries as a result of a serious incident that occurred on or about **04/10/14**.

We note that the insurance policy provides for $5,000 in med pay coverage.

Please allow this correspondence to serve as our demand that the full medpay coverage be tendered and made payable to Alvarez & Barbara, LLP trust account. Our firm's tax ID is 20-4861800.

We enclose the medicare ledger showing medical bills in excess of $100,000, and said expenses are continuing and on going.

Thank you in advance for your anticipated, and prompt cooperation in connection with this claim. I look forward to hearing from you soon. In the interim, I remain

Sincerely,

Hugo V. Alvarez

HVA:jp
Enclosure
G:\1777-0437-00\L\Botello med pay demand 001.doc

**EXHIBIT**
B

12/2/2014 2:14:33 PM

## TOTALS
for medical and hospital claims

| | Amount providers have billed the plan | Total cost (what the plan has approved) | Plan's share | Your share |
|---|---|---|---|---|
| **Totals for this month** (for claims processed from 05/01/2014 to 05/31/2014) | $142,054.58 | $51,929.69 | $51,697.44 | $10.02 |
| **Totals for 2014** (all claims processed through 05/31/2014) | $144,124.58 | $53,053.28 | $52,801.56 | $10.02 |

616596

2

12/2/2014 2:14:34 PM

3

## Yearly Limits - these limits give you financial protection

These limits tell the <u>most</u> you will have to pay in "out-of-pocket" costs (copays, and your coinsurance) for medical and hospital services covered by the plan.

These yearly limits are called your "out-of-pocket maximum." They put limits on how much you have to pay, but they do <u>not</u> put a limit on how much care you can get. Some items and services will not count toward that maximum. To learn more, please see Chapter 4 of your Evidence of Coverage (EOC).

•Once you have reached your limit in out-of-pocket costs, <u>you stop paying out of pocket for all services.</u>

•You keep getting your covered medical and hospital services as usual, and the <u>plan will pay the full cost for the rest of the year.</u>

As of 05/31/2014, **you have had $0.00 in out-of-pocket costs that count toward your $3,000.00 out-of-pocket maximum for covered services.**

$0 ├─────────────────────────────┤ $3,000

## Details for claims processed in May 2014

**Look over the information about your claims — does it seem correct?**

•If you have questions or think there might be a mistake, start by calling the doctor's office or other service provider. Ask them to explain the claim.

•If you still have questions, call us at Customer Service (phone numbers are in a box on page 1).

**You have the right to make an appeal or complaint**

•Making an appeal is a formal way of asking us to **change our decision** about your coverage. You can make an appeal if we deny a claim. You can also make an appeal if we approve a claim but you disagree with how much you are paying for the item or services. For information about making an appeal, call us at Customer Service (phone numbers are in a box on page 1).

**Remember, this report is NOT a BILL:**

•If you have not already paid the amount shown for "your share," **wait until you get a bill from the provider.**

•If you get a bill that is **higher** than the amount shown for "your share," call us at Customer Service (phone numbers are in a box on page 1).

12/2/2014 2:14:35 PM

BRENDA GONZALEZ

| Claim Number: 7705t320 (In-network provider) | Date of service | Amount the provider billed the plan | Total cost the amount the plan approved | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-SBSQ HOSPITAL CARE/DAY 25 MINUTES  (billing code 99232) | 4/19/2014 | $190.00 | $77.97 | $76.41 | $0.00 |
| 002-SBSQ HOSPITAL CARE/DAY 25 MINUTES  (billing code 99232) | 4/20/2014 | $190.00 | $77.97 | $76.41 | $0.00 |
| **TOTALS:** | | **$380.00** | **$155.94** | **$152.82** | **$0.00** |

DOCTORS ANESTHESIA ASSOC

| Claim Number: 7712s320 (Out-of-network provider) | Date of service | Amount the provider billed the plan | Total cost (the amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-ANES-OPEN/SCOPE HUM HEAD&NCK SC AC&SHLDR JNT:NOS (billing code 01630) | 4/18/2014 | $2,755.00 | $544.95 | $534.05 | $0.00 |
| 002-ART CATH/CANNULAT SAMPLING MON/TRANSFUS-SP; PERQ  (billing code 36620) | 4/18/2014 | $400.00 | $58.93 | $57.75 | $0.00 |
| 003-US GUID NDLE PLCMT IMAGING SUPERVIS&INTEPR  (billing code 76942) | 4/18/2014 | $300.00 | $36.78 | $36.04 | $0.00 |
| **TOTALS:** | | **$3,455.00** | **$640.66** | **$627.84** | **$0.00** |

61698

4

12/2/2014 2:14:36 PM

DOCTORS ANESTHESIA ASSOC

| Claim Number: 7712833.0 (Cert. card. card. provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-INJECTION ANESTHETIC AGT; BRACHIAL PLEXUS SINGLE (billing code 64415) | 4/18/2014 | $500.00 | $73.94 | $72.46 | $0.00 |
| **TOTALS:** | | **$500.00** | **$73.94** | **$72.46** | **$0.00** |

DOCTORS HOSPITAL INC

| Claim Number: 78089660 (Cert. card. provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-ROOM & BOARD - PRIVATE (MEDICAL OR SURGICAL OR GYN (billing code 111) | 4/10/2014 | $13,848.00 | $0.00 | $0.00 | $0.00 |
| 003-PHARMACY - GENERAL CLASSIFICATION (billing code 250) | 4/10/2014 | $7,637.00 | $0.00 | $0.00 | $0.00 |
| 004-PHARMACY - IV SOLUTIONS (billing code 258) | 4/10/2014 | $201.00 | $0.00 | $0.00 | $0.00 |
| 005-MEDICAL/SURGICAL SUPPLIES AND DEVICES - NON-STERIL (billing code 271) | 4/10/2014 | $2,223.00 | $0.00 | $0.00 | $0.00 |
| 006-MEDICAL/SURGICAL SUPPLIES AND DEVICES - STERILE SU (billing code 272) | 4/10/2014 | $4,957.00 | $0.00 | $0.00 | $0.00 |
| 007-MEDICAL/SURGICAL SUPPLIES AND DEVICES - OTHER IMPL (billing code 278) | 4/10/2014 | $12,340.00 | $0.00 | $0.00 | $0.00 |

01599

5

12/2/2014 2:14:37 PM

DOCTORS HOSPITAL INC

| Claim Number: 730396550 (in-network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 008-LAB - GENERAL CLASSIFICATION (billing code 300) | 4/10/2014 | $36.00 | $0.00 | $0.00 | $0.00 |
| 009-LAB - CHEMISTRY (billing code 301) | 4/10/2014 | $5,469.00 | $0.00 | $0.00 | $0.00 |
| 010-LAB - HEMOTOLOGY (billing code 305) | 4/10/2014 | $1,220.00 | $0.00 | $0.00 | $0.00 |
| 011-LAB - UROLOGY (billing code 307) | 4/10/2014 | $164.00 | $0.00 | $0.00 | $0.00 |
| 012-RADIOLOGY / DIAGNOSTIC XRAY - GENERAL CLASSIFICATI (billing code 320) | 4/10/2014 | $5,745.00 | $0.00 | $0.00 | $0.00 |
| 013-RADIOLOGY / DIAGNOSTIC XRAY - CHEST (billing code 324) | 4/10/2014 | $1,770.00 | $0.00 | $0.00 | $0.00 |
| 014-NUCLEAR MEDICINE - DIAGNOSTIC (billing code 341) | 4/10/2014 | $4,665.00 | $0.00 | $0.00 | $0.00 |
| 015-NUCLEAR MEDICINE - DIAGNOSTIC (billing code 343) | 4/10/2014 | $1,347.00 | $0.00 | $0.00 | $0.00 |
| 016-RADIOLOGY / CAT SCAN - HEAD SCAN (billing code 351) | 4/10/2014 | $3,459.00 | $0.00 | $0.00 | $0.00 |
| 017-RADIOLOGY / CAT SCAN - BODY SCAN (billing code 352) | 4/10/2014 | $5,964.00 | $0.00 | $0.00 | $0.00 |
| 018-OPERATING ROOM SERVICES (billing code 360) | 4/10/2014 | $29,366.00 | $0.00 | $0.00 | $0.00 |
| 019-ANESTHESIA - GENERAL CLASSIFICATION (billing code 370) | 4/10/2014 | $5,926.00 | $0.00 | $0.00 | $0.00 |

61600

6

12/2/2014 2:14:38 PM

DOCTORS HOSPITAL INC

| Claim Number: 76089B50<br>(thenetworkprovider) | Date of<br>service | Amount<br>the provider<br>billed the plan | Total cost<br>(amount the<br>plan approved) | Plan's<br>share | Your share |
|---|---|---|---|---|---|
| 020-RESPIRATORY SERVICES -<br>GENERAL CLASSIFICATION (billing<br>code 410) | 4/10/2014 | $417.00 | $0.00 | $0.00 | $0.00 |
| 021-PHYSICAL THERAPY - GENERAL<br>CLASSIFICATION (billing code 420) | 4/10/2014 | $320.00 | $0.00 | $0.00 | $0.00 |
| 022-PHYSICAL THERAPY -<br>EVALUATION OR RE-EVALUATION<br>(billing code 424) | 4/10/2014 | $385.00 | $0.00 | $0.00 | $0.00 |
| 023-EMERGENCY ROOM - GENERAL<br>CLASSIFICATION (billing code 450) | 4/10/2014 | $2,804.00 | $0.00 | $0.00 | $0.00 |
| 024-CARDIOLOGY - GENERAL<br>CLASSIFICATION (billing code 480) | 4/10/2014 | $4,378.00 | $0.00 | $0.00 | $0.00 |
| 025-RECOVERY ROOM (billing code<br>710) | 4/10/2014 | $2,072.00 | $0.00 | $0.00 | $0.00 |
| 026-EKG/ECG<br>(ELECTROCARDIOGRAM) - GENERAL<br>CLASSIFICATION (billing code 730) | 4/10/2014 | $1,245.00 | $0.00 | $0.00 | $0.00 |
| 027-CONTRACTED HOSPITAL<br>PAYMENT | 4/10/2014 | $0.00 | $48,019.08 | $48,019.08 | $0.00 |
| 002-ROOM & BOARD - INTENSIVE<br>CARE - POST ICU (billing code 206) | 4/18/2014 | $8,408.00 | $0.00 | $0.00 | $0.00 |
| TOTALS: | | $126,366.00 | $48,019.08 | $48,019.08 | $0.00 |

016001

12/2/2014 2:14:39 PM

# E R STAT INC

| Claim Number: 78350230 (Out-of-network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-EMERGENCY DEPT VISIT HIGH SEVERITY &THREAT FUNC1 (billing code 99285) | 4/10/2014 | $920.00 | $192.11 | $188.27 | $0.00 |
| **TOTALS:** | | **$920.00** | **$192.11** | **$188.27** | **$0.00** |

## EDUARDO GONZALEZ HERNANDEZ

| Claim Number: 77455470 (In-network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-OFFICE OUTPATIENT VISIT 25 MINUTES (billing code 99214) | 4/24/2014 | $250.00 | $104.37 | $102.28 | $0.00 |
| **TOTALS:** | | **$250.00** | **$104.37** | **$102.28** | **$0.00** |

## EDUARDO GONZALEZ HERNANDEZ

| Claim Number: 77455490 (In-network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAM SHLDR; COMPLETE MINI 2 VIEWS (billing code 73030) | 4/21/2014 | $100.00 | $31.78 | $31.14 | $0.00 |
| **TOTALS:** | | **$100.00** | **$31.78** | **$31.14** | **$0.00** |

8

61602

12/2/2014 2:14:40 PM

## EDUARDO GONZALEZ HERNANDEZ

Claim Number 77455576
(the provider billed...)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan may reimburse...) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-OPEN TX PROX HUM FX W/WO INTRL/EXT FIX REPR TUBR (billing code 23615) | 4/18/2014 | $2,325.00 | $952.09 | $933.05 | $0.00 |
| 002-REP RUPTURED MUSCULOTENDINOUS CUFF OPEN; ACUTE (billing code 23410) | 4/18/2014 | $2,900.00 | $441.22 | $432.40 | $0.00 |
| TOTALS: | | $5,225.00 | $1,393.31 | $1,365.45 | $0.00 |

## JORGE GUERRERO

Claim Number 77455590

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan may reimburse...) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-OPEN TX PROX HUM FX W/WO INTRL/EXT FIX REPR TUBR (billing code 23615) | 4/18/2014 | $697.50 | $143.87 | $140.99 | $0.00 |
| 002-REP RUPTURED MUSCULOTENDINOUS CUFF OPEN; ACUTE (billing code 23410) | 4/18/2014 | $870.00 | $66.67 | $65.34 | $0.00 |
| TOTALS: | | $1,567.50 | $210.54 | $206.33 | $0.00 |

61993

9

12/2/2014 2:14:41 PM

MINERVA SANTO TOMAS

| Claim Number: 77256840 [In-network provider] | Date of service | Amount the provider billed the plan | Total cost plan approved | Plan's amount the plan approved | Your share |
|---|---|---|---|---|---|
| 001-OFFICE OUTPATIENT VISIT 25 MINUTES (billing code 99214) | 4/25/2014 | $175.00 | $92.78 | $90.92 | $0.00 |
| 002-ECG ROUTINE ECG W/AT LEAST 12 LEADS; W/I&R (billing code 93000) | 4/25/2014 | $25.00 | $14.77 | $14.47 | $0.00 |
| **TOTALS:** | | **$200.00** | **$107.55** | **$105.39** | **$0.00** |

QUEST DIAGNOSTICS

| Claim Number: 77633780 [In-network provider] | Date of service | Amount the provider billed the plan | Total cost plan approved | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-CULT BACTERL; W/ISOLAT&PRESUMP ID ISOLATES URINE (billing code 87088) | 5/1/2014 | $31.37 | $11.05 | $10.83 | $0.00 |
| 002-CULTURE BACTERIAL; QUANTITATIVE COLONY CNT URINE (billing code 87086) | 5/1/2014 | $58.41 | $11.01 | $10.79 | $0.00 |
| 003-BLOOD COUNT; COMPLETE AUTOMATIC (billing code 85027) | 5/1/2014 | $40.51 | $8.83 | $8.65 | $0.00 |
| 004-UA DIP STICK/TABLET REAGENT; AUTO W/MICRO (billing code 81001) | 5/1/2014 | $45.76 | $4.32 | $4.23 | $0.00 |
| 005-COLLECTION OF VENOUS BLOOD BY VENIPUNCTURE (billing code 36415) | 5/1/2014 | $20.55 | $3.00 | $2.94 | $0.00 |

616004

10

12/2/2014 2:14:42 PM

## QUEST DIAGNOSTICS

| Claim Number: 77633780 (In-Network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 006-COMPREHENSIVE METABOLIC PANEL (billing code 80053) | 5/1/2014 | $62.58 | $14.41 | $14.12 | $0.00 |
| 007-THYROID STIMULATING HORMONE (billing code 84443) | 5/1/2014 | $125.47 | $22.93 | $22.47 | $0.00 |
| 008-NATRIURETIC PEPTIDE (billing code 83880) | 5/1/2014 | $184.95 | $46.31 | $45.38 | $0.00 |
| 009-FIBRIN DEGRADATION PRODUCTS D-DIMER; QUAN (billing code 85379) | 5/1/2014 | $148.18 | $13.89 | $13.61 | $0.00 |
| **TOTALS:** | | **$717.78** | **$135.75** | **$133.02** | **$0.00** |

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 77242820 (Out-of-Network provider) | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAM SHLDR; COMPLETE MINI 2 VIEWS (billing code 73030) | 4/18/2014 | $48.00 | $12.29 | $12.04 | $0.00 |
| **TOTALS:** | | **$48.00** | **$12.29** | **$12.04** | **$0.00** |

12/2/2014 2:14:43 PM

# RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

**Claim Number: 772429360**
(Out-of-network provider)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION SPINE, THORACIC 3 VIEWS (billing code 72072) | 4/13/2014 | $45.00 | $11.82 | $11.58 | $0.00 |
| **TOTALS:** | | $45.00 | $11.82 | $11.58 | $0.00 |

# RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

**Claim Number: 772429370**
(Out-of-network provider)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION KNEE; THREE VIEWS (billing code 73562) | 4/10/2014 | $47.00 | $12.29 | $12.04 | $0.00 |
| 002-CMPT TOMOGRPH HEAD/BRAIN; W/O CONTRST MATERIAL (billing code 70450) | 4/10/2014 | $203.00 | $45.84 | $44.92 | $0.00 |
| 003-RADIOLOGIC EXAMINATION CHEST; SINGLE VIEW FRONTAL (billing code 71010) | 4/10/2014 | $41.00 | $10.02 | $9.82 | $0.00 |
| **TOTALS:** | | $291.00 | $68.15 | $66.78 | $0.00 |

12/2/2014 2:14:44 PM

---

---

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

Claim Number: 772243150 (Out-of-network provider)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-CMPT TOMOGRAPHY THORAX; WITHOUT CONTRST MATERIAL (billing code 71250) | 4/17/2014 | $235.00 | $55.13 | $54.03 | $0.00 |
| TOTALS: | | $235.00 | $55.13 | $54.03 | $0.00 |

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

Claim Number: 772243210 (Out-of-network provider)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION KNEE; THREE VIEWS (billing code 73562) | 4/10/2014 | $47.00 | $12.29 | $12.04 | $0.00 |
| 002-RADIOLOGIC EXAMINATION CHEST; SINGLE VIEW FRONTAL (billing code 71010) | 4/13/2014 | $41.00 | $10.02 | $9.82 | $0.00 |
| TOTALS: | | $88.00 | $22.31 | $21.86 | $0.00 |

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

Claim Number: 772243330 (Out-of-network provider)

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-PULMONARY VENTILATION (EG; AEROSOL OR GAS) AND PERFUSION IMAGING (billing code 78582) | 4/15/2014 | $189.00 | $56.92 | $55.78 | $0.00 |

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 77243330<br>(Out-of-network provider) | Date of<br>service | Amount<br>the provider<br>billed the plan | Total cost<br>(amount the<br>plan approved) | Plan's<br>share | Your share |
|---|---|---|---|---|---|

| TOTALS: | | $189.00 | $56.92 | $55.78 | $0.00 |
|---|---|---|---|---|---|

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 77243380<br>(Out-of-network provider) | Date of<br>service | Amount<br>the provider<br>billed the plan | Total cost<br>(amount the<br>plan approved) | Plan's<br>share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION<br>CHEST; SINGLE VIEW FRONTAL<br>(billing code 71010) | 4/15/2014 | $41.00 | $10.02 | $9.82 | $0.00 |

| TOTALS: | | $41.00 | $10.02 | $9.82 | $0.00 |
|---|---|---|---|---|---|

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 77243420<br>(Out-of-network provider) | Date of<br>service | Amount<br>the provider<br>billed the plan | Total cost<br>(amount the<br>plan approved) | Plan's<br>share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION<br>HAND; MINIMUM THREE VIEWS<br>(billing code 73130) | 4/16/2014 | $38.00 | $9.66 | $9.47 | $0.00 |

| TOTALS: | | $38.00 | $9.66 | $9.47 | $0.00 |
|---|---|---|---|---|---|

14

61808

RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 7243490 Of health network provider. | Date of service | Amount the provider billed the plan | Total Cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAMINATION ABD; SINGLE AP VIEW (billing code 74000). | 4/15/2014 | $45.00 | $10.02 DENIED (Look below for information about your appeal rights.) | $0.00 | $10.02 This service was denied, but you may be responsible for paying this amount. Look below for information about your appeal rights. |
| **TOTALS:** | | **$45.00** | **$10.02** | **$0.00** | **$10.02** |

61009

15

16

## Things to know about your denied claim:

•We have denied all or part of this claim and **you have the right to appeal**. Making an appeal is a formal way of asking us to **change the decision** we made to deny your claim. If we agree to change our decision, it means we will approve the claim rather than deny it, and we will pay our share.

•**The provider can also make an appeal, and if this happens, you may not have to pay.** You may wish to contact the provider to find out if they will ask us for an appeal. If the provider properly asks for an appeal, you will not be responsible for payment, except for the normal cost-sharing amount, and you don't need to make an appeal yourself.

•When we deny part or all of a claim, we send you a letter ("Notice of Denial of Payment") explaining why the service or item is not covered. This letter also tells what to do if you want to appeal our decision and have us reconsider.

•**IMPORTANT:** If you do not have this letter, call us at Customer Service (phone numbers are in a box on page 1).

•If you have questions or need help with your appeal, you can contact:
— Our Customer Service (phone numbers are in a box on page 1)
— 1-800-MEDICARE (1-800-633-4227), 24 hours a day, 7 days a week.

## RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

| Claim Number: 77243560 (Out-of-network provider) | Date of service | Amount the provider billed the plan | Total cost (plan approved) share | Plan's share | Your share |
|---|---|---|---|---|---|
| 001-RADIOLOGIC EXAM SHLDR; COMPLETE MINI 2 VIEWS (billing code 73030) | 4/10/2014 | $48.00 | $12.29 | $12.04 | $0.00 |
| **TOTALS:** | | $48.00 | $12.29 | $12.04 | $0.00 |

12/2/2014 2:14:48 PM

# RADIOLOGY ASSOCIATES OF SOUTH FLORIDA

17

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| **Claim Number: 77243620** (out of network provider) | | | | | |
| 001-CMPT TOMOGRPH UPPER EXTREM; W/O CONTRST MATERIAL (billing code 73200) | 4/11/2014 | $242.00 | $56.31 | $55.18 | $0.00 |
| **TOTALS:** | | $242.00 | $56.31 | $55.18 | $0.00 |

## ROMEO E ROJAS

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| **Claim Number: 76736630** (in network provider) | | | | | |
| 001-INITIAL HOSPITAL CARE/DAY 70 MINUTES (billing code 99223) | 4/10/2014 | $428.30 | $275.00 | $275.00 | $0.00 |
| **TOTALS:** | | $428.30 | $275.00 | $275.00 | $0.00 |

## RUBEN D PENARANDA

| | Date of service | Amount the provider billed the plan | Total cost (amount the plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| **Claim Number: 76823910** (in network provider) | | | | | |
| 001-INITIAL HOSPITAL CARE/DAY 50 MINUTES (billing code 99222) | 4/15/2014 | $375.00 | $152.72 DENIED (Look below for information about your appeal rights.) | $0.00 | $0.00 |
| **TOTALS:** | | $375.00 | $152.72 | $0.00 | $0.00 |

61611

12/2/2014 2:14:49 PM

## Things to know about your denied claim:

•**NOTE: We have denied all or part of this claim.** However, you are not responsible for paying the billed amount because you received this service from a Medica Healthcare Plan provider OR based on a referral from a Medica Healthcare Plan provider.

•**If you have questions, you can contact:**
— Our Customer Service (phone numbers are in a box on page 1)
— 1-800-MEDICARE (1-800-633-4227), 24 hours a day, 7 days a week.

**RUBEN D PENARANDA**

| | Date of service | Amount the provider billed the plan | Total cost (plan multiplied) (plan approved) | Plan's share | Your share |
|---|---|---|---|---|---|
| Claim Number: 77007920 (In-network provider) | | | | | |
| 001-SBSQ HOSPITAL CARE/DAY 35 MINUTES (billing code 99233) | 4/17/2014 | $260.00 | $112.02 | $109.78 | $0.00 |
| **TOTALS:** | | **$260.00** | **$112.02** | **$109.78** | **$0.00** |

0161/2

18

Sep. 18. 2014  3:38PM



MEDICA
HEALTHCARE PLANS INC.

09/18/2014

ALVAREZ BARBARA, LLP
1750 Coral Way
Second Floor
Miami, Florida 33145

RE: *Marta Hernandez*
Member Number: *10092580 00*
Accident Date: *04/10/2014*

To Whom it May Concern:

In connection with the above referenced matter, Medica Healthcare Plans Inc. is hereby asserting its subrogation and reimbursement rights to participate in the proceeds from the settlement in order to cover the medical services provided to Marta Hernandez. Enclosed is an itemized accounting of health benefits totaling $ 51,265.58, paid to date.

Medica Healthcare Plans Inc. is a Medicare Advantage ("MA") HMO with a contract with the Centers for Medicare and Medicaid. The purpose of this letter is to advise you of the applicability of the Medicare Secondary Payer Laws ("MSP"). Per 42 U.S.C. 1395y (b) (2) and.1 862 (b)(2)(A)(ii) of the Social Security Act (the "Act"), Medicare is precluded from paying for a beneficiary's medical expenses when payment "has been made or can reasonably be expected to be made under a Workers' Compensation plan, an automobile or liability insurance policy or plan (including a self-insured plan) or under no-fault insurance." However, Medicare may pay for a beneficiary's covered medical expenses conditioned on reimbursement to Medicare from proceeds received pursuant a third party liability settlement, award, judgment or recovery. The above mentioned Act is applicable to Medicare Advantage plans through 42 CFR § 422.108(a), which equally precludes Medicare Advantage plans from paying for a beneficiary's medical expenses when it is not primary.  Subsection (f) notes "the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations... The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations..."

EXHIBIT
C

Doc #: MHP00039_20140403

12/2/2014 2:14:51 PM

Sep. 18. 2014  3:38PM

In these instances, Medica Healthcare Plans Inc.'s reimbursement is reduced by a pro rata share of procurement costs. It is in your and your client's best interest to keep Medica Healthcare Plans Inc.'s payment and the obligation, to satisfy Medica Healthcare Plans Inc. claim in mind when negotiating and accepting a final dollar amount in settlement of the claim with the third party. Medica Healthcare Plans Inc.'s claim must be paid up front out of settlement proceeds before any distribution occurs. Moreover, Medica Healthcare Plans Inc. must be paid within 60 days of receipt of proceeds from the third party. Interest may be assessed, if Medica Healthcare Plans Inc. is not repaid in a timely manner. Repayment of Medica Healthcare Plans Inc.'s conditional payments must be made to Medica Healthcare Plans Inc. and communications are to be handled through me, the Coordination of Benefits ("COB") Analyst handling this case.

This shall serve as formal notice that, upon settlement of this matter, Medica Healthcare Plans Inc. wishes to exercise its subrogation rights to participate in the proceeds from the settlement in order to cover the medical services provided to Marta Hernandez.

Kindly keep me updated as to the progress of the case and any settlement awarded to Marta Hernandez.

If you have any questions, please do not hesitate to contact me at 305-670-8440 Ext. 1899 or 1259.

Sincerely,

Coordination of Benefits Analyst
Medica Healthcare Plans Inc.

Doc #: MHP00039_20140403

12/2/2014 2:14:52 PM

Sep. 18. 2014 3:38PM

No. 6324 P. 4/4

Member ID: 100XXXXXXXX
Member Name: MARTA HERNANDEZ
DOS: 04/XX/2014

12/2/2014 2:14:53 PM

$51,265.55





1777-0437

August 21, 2014

942 1 MB 0.435
***AUTO**MIXED AADC 720 R:942 T:10 P:10 PC:3 F:416901
MARTA R HERNANDEZ
9504 SW 89TH PL
MIAMI, FL 33176-9506

Ծ||սֈ||Ծ|ս·ֈֈֈֈ|ֈ|սֈֈ|ֈֈֈ·ֈ|ֈֈֈ·ֈ|ֈֈֈֈ·ֈֈ|ֈֈֈֈ·ֈֈ|ֈֈֈֈֈ



SUBJECT:     Medicare Secondary Payer Rights and Responsibilities
Beneficiary Name: HERNANDEZ, MARTA R
Medicare Number: 395440233D
Case Identification Number: 20142 26090 01259
Date of Incident: April 10, 2014

Dear MARTA R HERNANDEZ:

You are receiving this letter because we were notified that you filed a liability insurance (including self-insurance), no-fault insurance, or workers' compensation claim. This is confirmation that a Medicare Secondary Payer (MSP) recovery case has been established in our system.

If we know that you have a lawyer or other person representing you, we have sent him or her a courtesy copy of this letter and you will see him or her listed as a "cc" at the end of this letter.

*This letter gives you information on the following:*

1. What happens when you have Medicare and file an insurance or workers' compensation claim;
2. What information we need from you;
3. What information you can expect from us and when;
4. How and when you are able to elect a simple, fixed percentage option for repayment;
5. How and when you are able to self-calculate Medicare's conditional payment amount; and
6. How to contact us.

## What Happens When You Have Medicare and You file a Liability Insurance (including



---

12/2/2014 2:14:54 PM





## Self- Insurance), No-Fault Insurance, or Workers' Compensation Claim

Applicable Medicare law says that liability insurance (including self-insurance), no-fault insurance, and workers' compensation must pay for medical items and services before Medicare pays. This law can be found at 42 U.S.C. Section 1395y(b)(2)(A) and (B).

However, Medicare makes "conditional payments" while your insurance or workers' compensation claim is being processed to make sure you get the medical services you need when you need them. If you get a(n) insurance or workers' compensation settlement, judgment, award, or other payment, Medicare is entitled to be repaid for the items and services it paid for conditionally.

If you receive a settlement, judgment, award, or other payment related to this claim and Medicare determines that it has made conditional payments that must be repaid, you will get a demand letter. The demand letter explains how Medicare calculated the amount it needs to be repaid and it also explains your appeal and waiver rights. *If you decide to appeal or request a waiver of recovery, Medicare will <u>not</u> take any collection action while your appeal or waiver of recovery request is being processed. Please note, however, that interest will continue to accrue on any unpaid balance.*

## What Information We Need From You

- *Do you have a lawyer or other person representing you?*

  Medicare works to protect your privacy. We are not allowed to communicate with anyone other than you about your MSP case unless you tell us to do so. If you have a lawyer or other person representing you, please see the enclosed brochure. It explains what type of information we need from you in order to work directly with your lawyer or representative.

- *Is the information we have on your claim correct?*

  If the information at the top of this letter is incorrect or if you filed a no-fault insurance or workers' compensation claim and do not see the insurer/carrier listed as a "cc" at the end of this letter, please contact the Benefits Coordination & Recovery Center (BCRC) immediately at 1-855-798-2627.

- *Has your insurance or workers' compensation claim already been resolved?*

  If you already got a settlement, judgment, award, or other payment, we need the following information:

12/2/2014 2:14:55 PM







o   The date and total amount of your settlement, judgment, award, or other payment.

o   A list of the attorney fees and other costs that you had to pay in order to get your settlement, judgment, award, or other payment.

If your insurance or workers' compensation claim was dismissed or otherwise closed, we need documentation of that so that we are able to close your MSP case.

## What Information Can You Expect From Us and When

- *Medicare's Conditional Payment Amount*

Our system will automatically send you a Conditional Payment Letter within 65 days of the date on this letter. It includes a Payment Summary Form, which lists medical items and services Medicare has paid for that we believe are related to your claim. Keep in mind that this list is not final or complete until your insurance or workers' compensation claim is resolved.

If you would like the most up-to-date claims information, please visit www.MyMedicare.gov. Once your letter is issued, you will be able to access conditional payment amount information through the MyMSP tab, as well as current claims information using the MyMedicare.gov "blue button."

## How to Elect a Simple, Fixed Percentage Option For Repayment If You Have Experienced a Physical Trauma-Based Injury

If you experienced a physical trauma-based injury and you get a liability insurance settlement, judgment, award, or other payment of $5,000 or less, Medicare offers the option to pay 25.000% of your gross settlement, judgment, award, or other payment, instead of the amount that Medicare would otherwise calculate.

**If you wish to choose this option, you must formally elect it at the same time that you send us information on your settlement, judgment, award, or other payment.** Please visit the Beneficiary (http://go.cms.gov/beneficiary) or Attorney (http://go.cms.gov/attorney) sections of the Benefits Coordination & Recovery Center (BCRC) Website for all of the additional details. You will find model language that can be used to elect this option, as well as a special mailing address to ensure efficient processing.

## How and when you can self-calculate Medicare's Final Conditional Payment Amount before settlement.

If you experienced a physical trauma-based injury, can demonstrate that treatment has been

12/2/2014 2:14:56 PM

 

completed, and you expect to get a settlement of $25,000 or less, you may calculate Medicare's Conditional Payment Amount to help us expedite your case. Please visit the Beneficiary (http://go.cms.gov/beneficiary) or Attorney (http://go.cms.gov/attorney) sections of the Benefits Coordination & Recovery Center (BCRC) Website for all of the additional details.

## How You Can Contact Us

Please mail any documents to:

NGHP
PO BOX 138832
OKLAHOMA CITY, OK 73113

or fax documents to 405-869-3309. A special mailing address is required for the Fixed Percentage and Self-identified options (see www.CMS.gov)

For more information, please visit www. CMS.gov or call 1-855-798-2627 (TTY/TDD for the hearing or speech impaired: 1-855-797-2627).

Sincerely,
BCRC

Enclosures:
Benefits Coordination & Recovery Center Brochure
Correspondence Cover Sheet

12/2/2014 2:14:57 PM





# Correspondence Cover Sheet

Beneficiary's Name:     HERNANDEZ, MARTA R
Medicare Number:     395440233D
Date of Incident:     April 10, 2014
Case Identification Number: 20142 26090 01259

This cover sheet is for your use when mailing or faxing in correspondence to the Benefits Coordination & Recovery Center (BCRC). Please retain a COPY of this cover sheet for any future correspondence. The information above will ensure accuracy when handling your case documentation.

Please indicate the type of correspondence you are submitting to the BCRC to facilitate routing. Check all that apply:



- ☐ Check
- ☐ Settlement information
- ☐ Retainer agreement or other authorization documentation
- ☐ Other _____

**Note:** A Conditional Payment Letter is sent automatically within 65 days of this letter, or as soon as the information is available. **Separate requests for initial Conditional Payment Amounts will not make Conditional Payment information available sooner.**

In order to accurately associate claims to your case, please include a description of the injury. (i.e.: Knee, Physical Therapy, Slip and Fall, Lumbar Injury...)

_____

_____
_____
_____

<u>Submit correspondence to the BCRC address listed below:</u>

*Liability Insurance or No Fault Insurance Workers' Compensation:*

     NGHP
     PO BOX 138832
     OKLAHOMA CITY, OK  73113
     405-869-3309

12/2/2014 2:14:58 PM

11/03/2014 12:02:07 PM -0800 SEDGWICK                                    PAGE 1    OF 2

## Sedgwick Claims Management Services, Inc.

To:

Fax Number:          3052637699

From:                Lingenfelter, Andrew

Fax Number:

Date:                November 03, 2014

Subject:             Claim - 30142883949-0001 - MARTA HERNANDEZ - Date of Loss: 04/10/2014 - GL

Memo:

RE:   Account:      Publix Super Markets, Inc.
      Claimant:     HERNANDEZ, MARTA
      Claim No:     30142883949-0001
      Date of Loss: 4/10/2014

Dear Hugo Alvarez,

As you are aware, we service liability claims on behalf of Publix Super Markets, Inc.
We have completed our investigation of this matter and find no adverse liability against
Publix Super Markets, Inc.

To that extent, we deny any and all claims arising out of this incident and are now closing
our file.

Sincerely,

Andrew G. Lingenfelter
Claims Representative
Sedgwick Claims Management Services, Inc.
Phone: 863-499-8521 x 88678
Fax: 859-264-4061
E-mail: Andrew.Lingenfelter@sedgwickcms.com

---

The information transmitted is intended only for the person or entity to which it is addressed and may contain

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.



12/2/2014 2:14:59 PM

Sep. 29. 2014  2:12PM   Catlin Inc.                                        No. 0602   P. 1/2

CATLIN - SCOTTSDALE

PO Box 8049
Scottsdale AZ 85252
Telephone 480 755 6700
Fax 480 755 6999

September 29, 2014

Alvarez Barbara LLP
Atm: Hugo Alvarez
1750 Coral Way, Second Floor
Miami, FL 33145

RE:   Claim No.:       SCS-GL-140092
      Insured:         Commercial Douglas LLC
      Date of Loss:    April 10, 2014
      Your Client:     Marta Hernandez

Dear Mr. Alvarez:

This will confirm our receipt of your demand letter and package dated September 10, 2014 received in our office on September 15, 2014.

Please be advised that based on our investigation to date and our review of the medical documentation provided in your demand, we do not find our insured legally liable for your client's fall or her injuries. You mention that the slope of the parking lot is in violation of the ADA, and yet you do not provide any proof and/or documentation regarding the alleged violations. Furthermore, based on the medical documentation you included with your demand that includes records from Doctor's Hospital, it is clear that your client's fall had nothing to do with the slope of the parking lot, but rather due to your client's poor decision to go after her cart and while reaching for the cart she missed it entirely which caused her to fall. Your client's fall was solely due to her own fault. It is very clear from the hospital records that your client was suffering from poor health prior to her fall. Your client's surgery was delayed because she was diagnosed with hypoxemia, atelectasis and cardiomyopathy. These conditions were clearly pre-existing and were in no way related to her injuries from this incident. Your client's poor health condition could very well have been the underlying cause of her fall in the first place. Again it would appear that this was an unfortunate accident through no fault of our insured. In the absence of legal liability, we would not be justified in making any offers of settlement.

Again we are offering our insured's Medical Payments coverage which has a limit of $5,000. This coverage pays for medical expenses regardless of fault for injuries that occur on the premises and provided the expenses are incurred and reported to us within one year from the date of the accident. We have previously requested that you provide us with a copy of your firm's W9 and instructions on how you would like the medical payments check issued since Medicare is involved. To date you have not responded nor have you provided us with a copy of your W9 form. Please contact me at the number

12/2/2014 2:15:00 PM

Page 2
SCS-GL-140092 Commercial Douglas LLC

below and advise if you would like the check issued to Alvarez Barbara LLP, Marta Hernandez and Medica Healthcare Plans Inc.

Sincerely,

*Lorraine Botello*

Lorraine Botello
Senior Claims Examiner
Catlin Specialty Insurance Co.
lorraine.botello@catlin.com
(480) 755-6732 Phone
(480) 755-6999 Fax

cc: